Third case of the morning. This is appeal number 232277. Randall Martin v. Robert Goldsmith and others. Mr. Kautzman. Thank you, Judge Scudder. May it please the court, and I also would like to reserve about three minutes for rebuttal if I may. No problem. May it please the court, the trial court aired when it dismissed with prejudice Deputy Randy Martin's complaint on a 12b6 motion despite the fact that Martin had pled a plausible due process claim. The defendants quite simply engaged in what was an intentional politically motivated campaign of spreading unproven falsehoods and they used a fabricated template Brady Giglio disclosure to effectively destroy his career. The trial court erroneously and at best prematurely determined at the outset that immunity was quote dispositive of the case and failed to accept Martin's allegations as true for the purpose of the motion to dismiss. Martin was indeed prevented from attempting to prove his claim, was prevented from proving that his resignation was fraudulently coerced and not voluntary, and was prevented from establishing through discovery that the defendant's actions did not meet the test for absolute immunity or for qualified immunity. Dismissal was quite simply not appropriate at the 12b6 stage and this honorable court should reverse the decision of the district court. As you are aware from the district court order, the matter was dismissed with prejudice. The district court actually determined facts by saying things like the district court says that immunity is dispositive in this case. It uses the phrasing because I find that they are shielded by immunity. Those are improper determinations by the trial court at a 12b6 phase. The trial court erred because it was still in the pleading stage and because of the basis of the disclosures they could have been false. The prosecutorial duties may have been outside the advocacy function and therefore those things should be flushed out. Let me make sure I understand. Are we still pursuing any allegations at all against the board of commissioners or against the state of Indiana? I think only derivatively because of their place in the food chain but clearly the gravamen of the case is against the sheriff and the prosecutors. I think that is an important question. If the case were to go back, it seems the reason you named the board and the state, you didn't name the state to collect money damages from the state. It seems you named these on theories of indemnity recovery available under Indiana law. Is that a fair construction of the complaint? Yes, I think that is fair. Also, in this particular case, the board of commissioners in this particular case, not only did we have these Brady Giglio disclosures, they were disseminated in two ways, remember. The first disclosure was a template disclosure sent out to the Bar Association members and to Randy Martin's eventual employer that he was going to go to. Can I pause you on that point? What disclosures took place? I'm focused on the complaint because that's where we're at right here. On May 3rd, 2021, that's the effective date, correct, of the resignation? Correct. What do you think you pled with respect to the disclosures that took place then or within a day or two? I think we pled that the template disclosure was sent to the members of the Bar Association and an email, including the template disclosure, went to the town of Dayton where he had the part-time employment that he had been offered full-time employment for. It wasn't until later that it became case-specific. I think that becomes very instructive. But is there any disclosure because we have both parties, right? On the third, is the sheriff, is the allegation that the sheriff made the disclosures to the town of Dayton or both of those disclosures to the county as well as to the town of Dayton both made by the state prosecutors? Yes, the allegation is that the sheriff did work with and in concert with the prosecutors in providing that information. That's frankly what trials are for and that's why we're troubled that we haven't gotten to the point of being able to proceed with the development of those facts. Can I focus on FLORA for just a second? I think what you just said seems to track the complaint because in paragraph 37 you say the defendant's plural, right? And then you refer to the town of Dayton disclosure. With respect to FLORA though, it looks to me, and correct me if I'm wrong, from 44 and 45 of the complaint that the FLORA allegation is more limited to Sheriff Goldsmith. I think that may be right, Judge. You want me to read 45 to you? Don't take the time. I'll read it to you. It says, ellipses a little bit here. Okay, Goldsmith provided the town of FLORA with false misleading, etc. regarding Martin during the application process that caused Martin to lose the opportunity with the town of FLORA. Okay, and in the paragraph above that, there's clarification about how he was being recruited. He hadn't worked there but was being recruited and then you make the point that FLORA is in Carroll County, not in Tippecanoe County. So that's why I'm asking you the question. There's no reference of Harrington. There's no reference of Mr. Biss. Yeah. I think that we believe that the claim is broad-based enough to cover definitely Sheriff Goldsmith but also the actions of the prosecutors because they are the ones that helped draft this template disclosure that we believe also went to the town of FLORA and killed that job opportunity. So I would be hesitant at this point to carve out and say that the prosecutors aren't in some way responsible for the loss of that job opportunity as well. So the district court even acknowledged after it made those findings about shielded by immunity, even the district court acknowledged that this was, quote, a further step removed from a prosecutorial function when it started going to Dayton and to FLORA and so forth and so on and especially to the Bar Association. Let me back you up two steps though. Before that, there was the finding about absolute immunity as regards to the disclosures in pending criminal cases. Are you still contesting that? And if so, how do you square that with the Supreme Court telling us we have to look at what the function of a prosecutor is, the advocate for the state, and is this thing happening during the pendency and in the judicial phase of a prosecution or a case? Yeah. I think that's a great question, Judge Pryor. I'm not Judge Pryor. I'm Judge Jackson. I'm so sorry. I think there's really two issues there. Number one, with regard to the actual case-specific Brady disclosures that were filed in cases, I think that normally meets a prosecutorial advocacy function. The question there is only whether or not they were knowingly or recklessly putting falsehoods into those disclosures. We think they were, and that would take them out of the ability to do that. I think there's case law that shows that that kind of reckless, knowing, intentional fabrication of evidence, I think that's from the Fields 2 case, would not be protected even in that function. Notwithstanding that, clearly the template disclosure, the ones that were not filed in the criminal cases themselves, we don't think enjoys any of that protection. So, we think the court in the 12B6 ruling failed to address the clear issue here, and that's the deprivation of the tenured employment without due process of law. We believe the complaint was clearly sufficiently set forth under the plausibility requirements of Iqbal and Twombly. We have a 1983 valid cause of action. We've laid out the elements of due process in the complaint. The Indiana case of Marion County Sheriff's Board v. People's Broadcasting shows that he had a legitimate claim of entitlement to his job, and essentially, he was cheated out of the bona fide opportunity for an opportunity to be heard and to challenge the impropriety of those allegations. But before we get to the merits, though, we still have to get around qualified immunity. If we find that releasing it to the County Bar Association, releasing it to cases or to law enforcement officers where Martin was not included in pending cases, even investigations, how do we get around this idea that there was no clearly established law on that second prong of qualified immunity before we get to the merits? Well, I think, Judge, it's a question of how narrow you draw that clearly established role of qualified immunity. We believe that it is clearly established that a government official like a police officer is entitled to due process before deprivation of that legitimate property interest. And I think that is clearly established. I think the question you're phrasing goes more to the manner in how they denied him due process. It would be akin to if this were an excessive force case, and there's clear-cut case law out there that you can't use a nightstick or a flashlight to strike someone. But then someone comes in and says, well, in this particular case, they used some other instrumentality. They used a Barbie doll. And I never found a case where a Barbie doll used as a weapon was found to be violative of the law, so you can't point to qualified immunity in that regard. I think the same thing happens here. We know that they violated due process. He did not have an opportunity to be heard either for the loss of his Tippecanoe County job or for getting on that Brady designation and that template. And I think your question goes to the manner of which, and that's why I think the law is clearly established that his rights were violated. Because you don't believe we can get into the issue of whether or not law enforcement officers were on notice that they could not disclose their finding that Martin was going to be on their Brady Giglio disclosure list. I think that's right. There's no doubt about the fact that they knew or should have known that they were on notice, that they cannot trade in those knowing intentional falsehoods that we believe that we should have been allowed to prove in court. But wasn't it Martin's decision, though, to withdraw from going further with the hearing? We know we're characterizing it as falsehoods. However, there was a preliminary finding by the law enforcement agency that Mr. Martin had violated Brady Giglio. I agree with you, but we think that that opportunity for hearing was illusory, frankly, that he had bargained for two things in that resignation agreement. One, that the allegations were going to be withdrawn. And the state tries to find some haven in drawing a distinction between charges being withdrawn and allegations being withdrawn. And I think it's a distinction without a difference. But he also bargained for a neutral reference letter. And I didn't see that language in the agreement. I looked for it. It's, I think, the third prong in that agreement. I have it for you, I think. It specifically says in the agreement, I think it is number three. Neutral letter of reference. The sheriff will provide a neutral reference to prospective employers of Martin that will only include the following information. Date of employment, position held, resignation, and resign for personal reasons. And that's the violation? Absolutely. I mean, that template goes far beyond a neutral letter of resignation. It's quite the antithesis of that. So my point simply is, it was not a voluntary resignation because it had conditions attached. And those conditions not only were not fulfilled, we believe that they knew that they weren't going to fulfill them. And that's why the very day the agreement was effective, May 3rd, was the same date that the disclosure went out to the members of the bar and to his prospective employer. That wasn't by accident. That was intentional. What we believe was misconduct. And they should not be shielded by immunity for that kind of action. I know I'm only down to two minutes, so I'd like to reserve the remaining for rebuttal if I can. Yeah, absolutely. Thank you.  Mr. Jones, good morning. Good morning. May it please the Court. The District Court correctly dismissed the claims against both Prosecutors Harrington and Biss, as well as Sheriff Goldsmith. I understand those are the only claims being challenged here today, and that the claims against the State of Indiana and the Board have been abandoned. Hold on, hold on. I don't know about that. Sorry. They're not challenging that dismissal in this appeal. Of course, and sorry, I'm getting sideways. No, go ahead and start. Just go ahead and start with Goldsmith, and we'll worry about the other claims. We have four critical points that are the subject of the suit against the Prosecutors and the Sheriff. We have the disclosure made by the Prosecutors in ongoing active criminal cases. We have the communications with the Town of Dayton and communications with the Town of Flora. And we have the disclosure, the forwarding of the disclosures to the members of the local bar. And then we have the, Mr. Martin's resignation of his employment. Each of those is, each of those claims is barred by either absolute or qualified immunity, and so the District Court correctly dismissed them. Well, why don't you, can you start with Sheriff Goldsmith? Yes. The, Sheriff Goldsmith, the, I think the central claim against Sheriff Goldsmith is that he deprived him of due process in relation to the resignation of employment. Right, and the District Court, just picking up on what you said, the District Court didn't resolve that on the basis of absolute or qualified immunity, but rather on the basis that Mr. Martin resigned. And what the District Court said is, well, if you voluntarily resigned, you know, you voluntarily gave up your right to a hearing that way, and you can't, therefore, allege a procedural due process violation if they didn't give you a hearing because you forfeited it by resigning. And the question I have for you is, how is that really in any way consistent with the complaint? Because we're at the pleading stage. It seems as clear, as clear as day to me. Now, I don't know whether it can be proved or not, that the theory is one of coerced resignation, which, go ahead. I'm sorry, that's the legal claim, absolutely. But the facts that actually pled don't, that are actually pled, and it's Mr. Martin's burden to plead those facts, don't establish coercion under this court's authority. That he was subject to investigation, that he, that a special prosecutor was appointed to investigate him does not rise to the level of a coerced resignation. This court hasn't held that. That that didn't present any sort of Hobson's choice where it was, we are going to charge you with a crime unless you resign. That's not what happened here. On the eve of they filed the charges, the merit board hearing was set. We have to, the only thing we can do is read the complaint. That's all we can do. Right? It's not, what happened would come out in discovery. And everything you're saying may be right. I don't know. But when you look at the complaint here, I don't know how you can read the complaint any other way than he was, he was induced, he was, that's his allegation. Induced, coerced into giving up the hearing. That's the procedural due process issue. In exchange for these understandings. And then, you know, the defendants did the following, you know, beginning on the very, right as the ink was drying as the agreement was signed. And that's what he's alleged. I agree that he's, he's alleged those, those, he, that he's alleged that he has been coerced and that he was induced into signing this agreement. But the facts that are actually alleged to support that coercion don't establish coercion under this court's holdings. What holdings do you have in mind? I think we look to Polka. Polka is actually very similar to this, where you had a law enforcement officer who resigned in the face of a merit board hearing. And this court said that isn't the, that isn't what we, that doesn't rise to the level of coercion. Because the merit board hearing is where all of this could have been ferreted out. But that was the process owed to Martin before, to, that was the process owed before the department could terminate him on the basis of the investigation and allegations. But instead of going through that process, instead of exercising his due process rights to a hearing before the merit board, and then eventually judicial review by Indiana state courts. He and his attorney negotiate a resignation. He forgoes that opportunity to be heard and resigns. And he says he felt coerced and that he. What's your response to the, to the, to the concerns about parent? I can't for the life of me figure. I don't know whether it's true or not. Okay. All you have to do, you have to read the complaint. What would be the rationale for sending the template disclosure to all members of the Tippecanoe County Bar, including those that do trusts and estates work? Well, I, I think there, that is the, what we know in terms of prosecutors, Brady Giglio obligations is the Supreme Court has aired on the side of caution or the Supreme Court has encouraged a prudent prosecutor errors on the side of caution. So, so how does sending the template disclosure to a member of the Tippecanoe Bar that writes wills fulfill a Brady Giglio disclosure obligation? It's entirely. It has nothing to do, it has nothing to do with Brady and Giglio disclosures. Well, I, I think that it's entirely possible that that attorney may have had a prior case that involved, involved criminal work. And, you know, the basis for our assertion that, that absolute immunity would capture even that relies in, relies on Van de Kamp and the Supreme Court's explanation that absolute immunity reaches beyond the four corners of a particular criminal prosecution. So let me ask you this hypothetical. Could, could the prosecutors, could the two, any prosecutors, what if they drafted a letter that contained in substance what the template disclosure, and they sent it to every sheriff's office in the state of Indiana? Absolute immunity? I think yes, Your Honor. And I, and I have two reasons why I think. What if they sent it to every law enforcement agency in Indiana, Ohio, Michigan, and Illinois? I think as the boundaries of our, of the disclosure get broader, we start to stray into sort of the line drawn in Buckley, where the Supreme Court says press releases are entitled to only qualified immunity, but not, I think it's Buckley that says press releases, those sorts of public communications by prosecutors are entitled only to qualified, not absolute immunity. Whereas Brady Giglio disclosures, this court and the Supreme Court have been clear, are absolute immunity. And so this, I agree, sort of is on the border between those two things. At what extent a communication, here in our view it's a communication to members of the local bar in a small county in Indiana that a prosecutor could reasonably foresee is intended to. Are you overlooking our guidance from the Supreme Court that Brady and Giglio is case specific? It's about obligations to specific defendants? No, Your Honor, I don't think so. Yes, the obligation arises in particular cases, but I think Vandekamp hits this point squarely when they say even before you get into a particular criminal prosecution, the obligation on a prosecutor to maintain a database, to maintain a list, to have set in place procedures for handling and disclosing and distributing this kind of information is nevertheless shielded by that sort of absolute immunity. And I think to circle back to sort of where we began, paragraphs 38 and 39 of Mr. Martin's report. Vandekamp is limited by its terms to disclosures in specific trials. I'm looking at the opinion. I mean, I can read it to you. I agree, Your Honor, I think, but our argument is sort of premised on how the court got there and what it was looking at. Because it's not the, what Vandekamp is looking at, though, is not the prosecutor who appeared in a particular case. It's looking at the supervisory prosecutors. Well, sure, because if a supervisor says, I think you need to make this disclosure, right, it's the line prosecutor after consulting or seeking advice from a supervisor. And so, of course, the supervisor is covered. And so if the court, and I agree that this is, in our view, this sits on the boundary between, that this kind of disclosure in this way sits on the boundary between, is on the boundary of absolute immunity. And if the court determines that this sits on the, is outside the scope of absolute immunity, because it's outside the scope of any particular criminal prosecution, then qualified immunity still bars the claim. Because what Mr. Martin hasn't pointed to anywhere is any court, any case clearly establishing a right against the disclosure outside of the confines of a particular prosecution. Okay, but here's the problem with that. What you're saying in that analysis is the two prosecutors should receive qualified immunity because there's some ambiguity around the kind of scope of absolute immunity, right? There's no clearly established law that's telling them they can't, okay. The problem is that there's an analytical error, there's a legal error in the analysis. Because we've got to remember, absolute immunity is a defense, right? Absolute immunity is a defense that the prosecutors are coming forward with here. Qualified immunity is immunity from liability on the plaintiff's claim. And the plaintiff's claim is one alleging a violation of the 14th Amendment's due process clause. And so the only way that I think qualified immunity can attach at the pleadings, right, is to join issue with the factual allegations in the complaint regarding the coerced resignation theory. In other words, the fact that there's ambiguity about how absolute immunity works here, I don't know how you can afford qualified immunity to ambiguity around the scope of a defense. I don't know of any case law like that. Well, but I think when we're looking at the qualified immunity case law and what we're looking for is a clearly established right. You agree that qualified immunity is immunity from liability on the plaintiff's claim. They cannot be liable for money damages on the claim brought in the complaint. You agree with that? Yes. What's the claim in the complaint? Well, the claim in the complaint is we have the— Procedural due process violation. Yes. Okay, so how taking the allegations in the light most favorable to Mr. Martin at the pleading stage is there qualified immunity? I think that maybe you can convince us, but I think that's the right question. Well, when we look at what the—he would need to establish or the court would need to find it was clearly established that he had a right against having the allegations of misconduct disclosed or circulated. And so that would be the inquiry in our view as to the disclosures made by the prosecutors. But the disclosures aren't what the procedural due process—what he's saying is the procedural due process violation is the coordinated collective alleged conspiratorial coercion into getting him to give up the right to the merit board hearing. That's his allegation. In other words, he's not saying that my procedural due process rights were violated when they faxed this to the members of the bar. That's not his theory. Right, and I think we have—our argument has been all along that those are separate events and that those are distinct. He would—whether or not he has pled—in our view, he has not adequately pled coercion to establish a deprivation of his due process rights. But whether or not he was deprived of his due process rights in the manner of his resignation, that is separate from the prosecutor's subsequent disclosure of the allegations against him in ongoing cases to the law enforcement agencies and to the members of the bar. And I think that what we also see in his complaint in paragraphs 38 and 39 are allegations that Chief Deputy Biss called the town of Dayton and said, look, we don't believe Mr. Martin is credible. We think this information comes out of the trial, and we won't be able to use it. And at least the Fourth and the Ninth Circuits have said those kinds of communications are squarely absolute immunity. And so in our—we need to sort of tease this apart and treat each of these four events separately, has been our view, rather than— So let's start with the county bar. How do we tease that one out? The county bar, I think, if that is—if the court decides that that is more of a—in the vein of a press release, then I think that would be a fair conclusion. Then we still would need to decide that— Would immunity protect it? I think qualified immunity would protect it because, remember, the qualified immunity is twofold. There's first determining whether there's a clearly established right. And in our view, Mr. Martin certainly hasn't cited any case clearly establishing a right against having allegations of misconduct disclosed by a prosecutor. But that's not his allegation. His allegation is I was denied due process. I was induced into giving up my board hearing because I believed I was closing the door on these allegations. And it would appear there's a clearly established right against that. Well, and then—and I think that the district court, in our view, correctly resolved that by saying that the facts don't—even at the pleading standard, he hasn't pled adequate facts to demonstrate coercion. Simply asserting coercion falls into the vein of alleging legal conclusions, not factual allegations to establish coercion. And this court's also never adopted, to our knowledge, a fraudulent inducement state law theory exception to voluntary resignations. For that reason, we would ask the court to affirm. Before you leave the podium, I do want to follow up, though, on the last. It's the disclosure to the flora that was made by—I believe that's by the sheriff. Would that have been in violation of the agreement that the sheriff had entered into? I don't think that's a violation of the terms of the agreement. I think that—and to the extent it was, that that's a state law contract dispute, not a federal constitutional claim. And that that furthers the sheriff's own Brady obligations to make sure that other law enforcement agencies are aware of the allegations. Because, of course, Brady is attributed to the prosecutor. As counsel pointed out, Carroll County is a different prosecutor with his own reporting obligations. And so the sheriff in Tippecanoe County making a law enforcement agency in Carroll County aware of allegations that would need to be passed to a prosecutor to eventually be passed in a criminal case, I think is furthering his own Brady obligations to the state. Thank you. Thank you. You're quite welcome. Thank you, Your Honors. Very briefly, to follow up on Judge Pryor's question just then, clearly that communication to the town of Flora did violate the terms of the agreement. And it's all then swept back into the fact that, but for the agreement, he would have been able to have that notice and opportunity to be heard. With regard to the questions about the clear-cut rationale of Brady decisions, it's very important for this court to understand that you have the ability to set forth that, as the amicus points out, these rights can coexist. We can have robust Brady-Giglio disclosures that go in case-specific filings in a court and give the accused what they need for impeachment evidence to fight their case. That does not mean that that should be at the expense of the due process rights of police officers. Those rights can coexist. And it's this weaponization and lack of standards in Brady-Giglio disclosures that have led to what the amicus points out as a rash of problems across the country. We are in a unique position right now of saying back to the district court, the facts were not fully developed. It was inappropriate to dismiss at the 12B6 stage. The facts must be fleshed out to get to the question of whether or not the adversarial or advocacy role was fulfilled in the immunity test and in qualified immunity. So I think all those things are very, very important. A couple other questions, points that were made. Part of the facts, like we don't even, for instance, know when that disclosure got sent to the Tippecanoe Bar Association. There's nothing in the record that was able to be fleshed out because we didn't get to the facts. How many of those lawyers that got that thing even are criminal lawyers? How many of them had cases that were pending in a case that they would have been entitled to a Brady disclosure for? It was nothing more than a smear campaign. It had nothing to do with legitimate Brady disclosures. We believe the case is undergirded by a clearly established right. That is the right to receive due process before being deprived of a 10-year property interest. Because qualified immunity and absolute immunity due to the advocacy role functional test are uniquely fact specific, we believe it's incumbent upon this court to reverse the trial court decision and send it back for further proceedings. I'd be happy to answer any other questions, but I would point out that we believe that this is how some courts have referred to, a breathtaking violation, a breathtaking injustice, if you will. And the bottom line is, prosecutors- I think we got it, Mr. Kotz. We got it. We appreciate the advocacy of both sides. Mr. Jones, thanks to you as well. We'll take the appeal under advisement. Thank you, sir. You're welcome. Thank you.